UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sheila and Jerome Hill,

                Plaintiffs,             Case No.

v.                                   Hon.
                                   United States District Judge

Kramer-Triad Management Group, LLC, a Michigan Limited Liability Company, and Coves at Bradbury Park Condominium Association, a Michigan domestic non-profit corporation, jointly and severally,      Magistrate Judge

                Defendants.

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, REQUEST FOR JURY DEMAND

Sheila and Jerome Hill ("Hills") are an African American couple who own a home that is part of the Coves at Bradbury Park Condominium Association ("Coves") in Flat Rock, Wayne County, Michigan. The Hills have suffered extensive damage to their home through the condominium association and its management agent's negligence. Specifically, the Coves and its management agent have persistently ignored Hills' requests for mitigation and repairs to their home resulting from damage to their home's foundation, which is a common element, not the Hills' property. Adding insult to injury, the

1

condominium association and its management agent have violated Federal and State civil rights laws by denying the Hills permission to install a banister to their porch stairs—a reasonable accommodation for Jerome Hill, who uses a cane or walker—and by denying them because of their race equal services and facilities to which all members of the condominium association are entitled. This unequal treatment includes exclusion from the condominium association's governance, failure to properly clear their driveway from winter snow and ice, failure to maintain the lawns and gardens adjacent to their property to the same level that the White neighbors enjoy, and failure to address the Hills' requests for maintenance to the structures adjacent to their home. The condominium association and its management association also routinely harass the Hills by sending them unsupported lien notices and assessing fines on them for infractions without providing any explanation or justification.

Therefore, Plaintiffs Sheila and Jerome Hill, by and through their attorneys, PITT, MCGEHEE, PALMER & RIVERS, complain against Defendants as follows:

## I. THE PARTIES

1.      Plaintiffs Sheila and Jerome Hill reside in a home that is part of the Coves at Bradbury Park Condominium Association, which is in Flat Rock, Wayne County, Michigan.

2.     Defendant Kramer-Triad Management Group, LLC ("Kramer-Triad"), is limited liability company registered in Michigan with an office address at 40600 Ann Arbor Rd. E. Ste. 201, City of Plymouth, County of Wayne, Michigan.

3.     Defendant Coves at Bradbury Park Condominium Association ("Coves") is a Michigan domestic corporation with a registered office in Ann Arbor, County of Wayne, Michigan.

## II.  JURISDICTION AND VENUE

4.     The instant action arises under the Fair Housing Act of 1968 as amended, 42 U.S.C. §§ 3601 *et seq*. ("FHA") and the 1866 Civil Rights Act, 42 U.S.C. §§ 1981, 1982, and 1988; therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.     Plaintiff also brings claims arising from the same core operative facts under the Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.* ("ELCRA"), the Michigan Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1101 *et seq.*, ("PWDCRA"), the Michigan Condominium Act, M.C.L. 559.110 *et seq.*, and negligence under the Common Law of Michigan; therefore, jurisdiction is proper on these state-law claims pursuant to 28 U.S.C. § 1367.

6.     The events alleged herein all transpired in the Eastern District of Michigan and Defendants reside in this District; therefore, venue is proper

pursuant to 28 U.S.C. § 1391.

## III.   ALLEGATIONS

7.   Sheila and Jerome Hill are a married African-American couple.

8.   The Hills bought their home in the Coves neighborhood in early June 2010.

9.   The Coves condominium association comprises at least 20 households.

10.   The Hills are the only African American family residing in the Coves condominium association.

11.   Defendant Kramer-Triad is the registered agent of Defendant Coves for the purposes of, *inter alia* collecting association fees, providing services and facilities described by the bylaws, and administering the communication of notices and imposition of fines on homeowners.

12.   Both Defendants set rules and covenants that apply to all home owners within the Coves, including Plaintiffs.

13.   Both Defendants provide services and facilities connected to the rights of homeowners within the Coves and paid for through association fees collected from Coves homeowners, including Plaintiffs.

14.   Through at least the last five years of their residence in a Coves home, Defendants have discriminated against Sheila and Jerome Hill because

4

there are African American by denying them their due rights, entitlements, and privileges as laid out in the Coves Bylaws ("bylaws").

### A.    Denial of a Reasonable Physical Accommodation

15.    Jerome Hill suffers from physical ailments that make him dependent on a cane or walker, and this disability is obvious to all Coves residents.

16.    Due to a personal injury Jerome Hill suffered when a construction site adjacent to his home collapsed and sent him tumbling ten feet into a pit and the subsequent lawsuit naming *inter alia* the Coves and Kramer-Triad as defendants, Defendants are aware of Jerome Hill's disability impairing his ability to walk.

17.    According to Article VI, "Restrictions," Section 3, "Alterations and Repairs" of the bylaws, a co-owner must receive "express written approval of the Board of Directors" to make any changes to any Common Elements, Limited or General.

18.    Because the Hills' home lacks a bannister on its front porch, Jerome Hill is afraid to use his front-porch stairs.

19.    Because the Hills' home lacks a bannister on its front porch, Jerome Hill is greatly endangered by the lack of a handrail to assist him in navigating in and out of his home.

20.   Since at least 2011, the Hills have repeatedly made written requests, the most recent being in April of 2017, to the Coves through its management provider Kramer-Triad to grant permission for bannisters to be added to their front-porch stairs.

21.   The porches of homes within the Coves are considered "limited common elements" under the bylaws.

22.   On April 12, 2017, Kramer-Triad acknowledged this request and stated that it had forwarded the request to the Coves Board of Directors.

23.   The Hills have made and continue to make this request because of Jerome Hill's disability to facilitate his safe use of the porch stairs, and they state so in their written requests to Defendants.

24.   Since 2011, other homes within the condominium association, including those of Coves Board members, have had banisters installed.

25.   The members of the Coves Board of Directors routinely develop and vote to approve budget priorities that favor improvements to fixtures like porches, sidewalks, and driveways adjacent to their own homes, while failing to consider the Hills' request for a bannister for their porch stairs.

26.   The members of the Coves Board of Directors routinely approve requests for others to make improvements to their homes, such as the installation of banisters.

6

27.     Neither Kramer-Triad nor the Coves have ever responded to the Hills' request for a banister, either to approve the request, deny the request, or engage in any form of negotiation or discussion regarding the scope and need for this request.

28.     The Defendants' inaction serves as a denial of the Hills' request.

29.     Since his injury in 2011, Jerome Hill has not been able to use his own home's front porch stairs independently and without fear, and he requires assistance to enter or leave his home because there is no safety railing to provide the support he needs to use these stairs.

### B.     Financial Harassment Regarding Condominium Dues Payments, Late Fees and Fines

30.     On October 17, 2017, the Hills became current on their monthly condominium association dues to the Coves and the Coves discharged a lien it had asserted against their property related to past-due association assessments.

31.     Around this same time, the Hills prepaid their November and December 2017 condominium association fees.

32.     Notwithstanding these transactions and payments, Kramer-Triad sent Jerome Hill a letter dated November 17, 2017 asserting a lien of $2,946.02 on the home, purportedly because of unpaid fees and fines.

33.    In response to this letter, the Hills sent Kramer-Triad requests to explain this email and documentation that they were current—indeed, that they had prepaid their November and December fees—and requesting information for the basis of this letter and lien.

34.    To the present date, the Hills have received no response from Kramer-Triad or the Coves documenting the basis for this purported lien.

35.    During 2015 and 2016, Kramer-Triad repeatedly deposited checks from the Hills for their Condominium fees for weeks, and even two months in at least one instance, after they were sent.

36.    Since the Hills realized that Kramer-Triad had failed to timely credit their account for fees paid, they have taken to sending their checks to the payment address in Arizona via certified mail, which has increased their costs of these monthly payments.

37.    There has been no subsequent response from the Coves Board of Directors or from Kramer-Triad regarding this matter.

38.    Other residents of the Coves are not subjected to undocumented liens or delayed processing of payments so as to necessitate certified mail of their monthly fees.

39.    Other residents of the Coves receive prompt responses to their questions and concerns.

40.   Defendants are ignoring and financially harassing the Hills because of their race.

41.   Sheila and Jerome Hill suffer significant anxiety and emotional distress concerning the security of their ownership of their home because of this lien notice and Defendants' failures to respond to their reasonable questions regarding the lien.

### C.   Defendants Fail to Provide Plaintiffs with Equal Ice and Snow Removal

42.   According to the Coves bylaws, the Coves is to provide ice and snow removal from the common areas, which include driveways and sidewalks.

43.   During the winter months, the Coves provides snow-clearing services to all common areas of the community, typically by 5 a.m. and then again in the afternoon.

44.   Defendants have provided this snow and ice removal services each year since the Hills have lived at the Coves.

45.   Despite snow and ice removal being a common service that Defendants provide for all Coves residents, the driveway to the Hills's garage and the sidewalk fronting their home are either not cleared at all in the morning or are cleared in a way that leaves their sidewalk and driveway icy and snowy.

46.    Defendants have denied the Hills equivalent snow and ice removal services since the Hills have lived at the Coves, and including the 2017-18 Winter.

47.    The white residents of the Coves are provided with service that keeps their sidewalks and driveways entirely clear of snow and ice by 5 am.

48.    Sheila Hill must shovel and clear her driveway and the sidewalk in front of her home herself.

49.    Jerome Hill, because of his disability, faces an increased risk of slipping and falling in bad weather because the driveway and sidewalk by their home is not cleared properly of ice and snow.

50.    The Hills have regularly complained to Defendants by phone, email, letter, and even the form provided by the Coves for maintenance requests that the snow and ice is not properly cleared from their driveway and sidewalks.

51.    The Hills have made it clear in their complaints that the inferior or altogether lacking snow and ice removal endangers Jerome Hill.

52.    Defendants have never acknowledged or responded to the Hills' complaints and requests for proper snow and ice removal.

53.    Defendants provide inferior services and ignore the Hills' complaints because of race.

10

**D.     Defendants Provide the Hills with Inferior Gardening and Lawncare**

54.     According to the Coves bylaws, the Coves maintains all common areas, which include lawns, garden beds, trees, and plantings.

55.     When the Coves provides weekly lawn care, gardening, and pruning of trees and bushes for its residents, the Hills are provided with inferior service that leaves the lawn surrounding their home bumpy, patch, weed-ridden, and muddy.

56.     Sheila Hill has also had to do her own mulching, weeding, and trimming, which has resulted in costs her neighbors have not had to bear and caused her emotional and physical exhaustion.

57.     The white residents of the Coves are provided with service that leaves their lawns manicured and weeded, their garden beds mulched and planted, and their trees and hedges trimmed.

58.     Defendants' failure to provide equivalent care to the lawn, garden beds, trees and plantings adjacent to the Hills's home has had a negative impact on the visual appeal of the Hills' home.

59.     It is commonly known that the visual appeal of a home can affect its market value.

60.     The Hills have regularly complained to Defendants by phone, email, letter, and even the form provided by the Coves for maintenance requests that their home receives inferior law and garden care.

61.     Defendants have never acknowledged or responded to the Hills' complaints and requests for proper snow and ice removal.

62.     Defendants provide inferior services and ignore the Hills' complaints because of race.

63.     This denial for equal lawn care and gardening services has caused Sheila Hill emotional and physical exhaustion.

64.     Defendants' failure to provide equivalent care to the lawn, garden beds, trees and plantings adjacent to the Hills's home has caused Sheila and Jerome Hill anxiety and emotional distress over the loss of value to their home.

**E.     Defendants have Failed to Consider and Persistently Denied Plaintiffs' Requests for Repairs and Improvements to Common Elements Adjacent to their Home.**

65.     The Coves has an undeveloped lot adjacent to the Hills' home.

66.     On or about 2012, this lot, which had previously featured a foundation trench from the abandoned construction of a home, was backfilled.

67.     The backfilling of the foundation trench was done in an inferior manner that has resulted in settling around the foundation of several inches.

12

68.     The air conditioning compressor for the Hills's home sits on land that abuts the former foundation trench.

69.     Air conditioning compressors are defined as "limited common elements" in the Coves bylaws.

70.     Around 2012, when Defendants' contractors refilled the foundation trench, they placed the Hills' air conditioning compressor on wooden two-by-fours, rather than on a proper concrete slab.

71.     All other air conditioning compressors attached to the homes of the Coves are installed properly on a concrete slab so that they remain level and appropriately functioning.

72.     The Hills have repeatedly requested that Defendants remove the two-by-fours and properly install the compressor on a concrete slab.

73.     According to the Coves bylaws, foundations are common elements.

74.     Also related to the refilling of the foundation trench, the settling of the land around the trench has resulted in damage to the foundation of the Hills' home abutting the filled trench, including buckling to their egress window, cracks, water damage, mold, damage from rodents and pests, and exposure to toxins.

75.     Over the years, the Hills have repeatedly requested that Defendants address the damage to their home's foundation and related problems.

13

76.     On April 12, 2017, Defendants acknowledged receipt of the Hills' most recent requests concerning these and other external repair concerns, but have yet to respond either to approve, reject, or request further information regarding any of these issues.

77.     Defendants do not ignore the maintenance requests and concerns of other residents of the Coves.

78.     The Hills face significant loss of value to their home because of these persistent and cumulative damages to the foundation and external elements of their home.

79.     The Hills have suffered significant out-of-pocket losses to make repairs to their home resulting from Defendants' acts and omissions regarding their air conditioner compressor and the damage to their foundation.

80.     The Hills have experienced severe emotional distress and anxiety related to Defendants' persistent refusal to address their concerns regarding the damage to their home.

## F.  Exclusion from Condominium Association and Racial Slurs

81.     The Coves bylaws dictate that the Secretary of the Board is to serve notice of each annual or special meeting upon each co-owner of record.

82.     Sheila and Jerome Hill have not received any such notice of an annual meeting or special meeting at any time since at least 2013.

14

83. The white co-owners in the Coves have received such notices from the Secretary of the Board.

84. On one occasion in around 2013 or 2014, shortly after the Hills purchased a new car, two of their neighbors, a white couple who live across the street, were walking by the Hills's home, and upon seeing the new car, said to one another, "looks like the N****r family made it" loudly enough that Sheila Hill heard this from the garage, where she was in her car at the time.

85. Sheila and Jerome Hill have experienced anxiety, humiliation, dignitary harm, and severe emotional distress through their exclusion from the Coves annual and special meetings and from the racial animus that they believe motivates this unfair treatment.

86. By being excluded from annual and special meetings of the Coves co-owners, Sheila and Jerome Hill have been denied their rights, privileges and entitlements granted to them in the bylaws as voting members of the condominium association, including but not limited to:

> a. Input into rules changes and other issues that affect the value of their home and their peaceful and quiet enjoyment of their home, and

      b.    Input into budget requests and approvals that affect the value of their home and their peaceful and quiet enjoyment of their home.

## IV. COUNTS AGAINST DEFENDANTS

### A: <u>Denial of Housing to a Person with a "Handicap" in Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)</u>

87.    Plaintiffs incorporate the above allegations by reference here.

88.    Jerome Hill has a handicap as defined by 42 U.S.C. § 3602(h).

89.    Plaintiffs have repeatedly, and most recently in April of 2017, requested permission from Defendants to install a banister on their home's front porch as a reasonable accommodation for Jerome Hill's disability.

90.    Defendants have failed to respond to Plaintiffs' request for this accommodation, effectively denying them the permission they need to install a banister on their front porch.

91.    Other homeowners in the Coves have been permitted to install banisters on their front porches.

92.    Plaintiffs have repeatedly, and most recently during the winter of 2017-18, requested that Defendants properly clear their driveway and sidewalk of ice and snow to accommodate Jerome Hill's disability.

93.    All other homeowners in the Coves receive proper snow and ice clearance.

94.    As a result of Defendants' unlawful discrimination against Jerome Hill, he has suffered numerous damages, including:

    a.    the inability to use his front porch stairs independently and confidently for fear of falling due to his disability, along with

    b.    the severe emotional distress, pain and humiliation from the discriminatory treatment he has received from having his reasonable request for an accommodation ignored.

**B:    Discrimination in the Terms, Conditions, and Privileges in the Provision of Facilities and Services in Connection with Housing on the Basis of Race, in Violation of the Fair Housing Act, 42 U.S.C. § 3604(b)**

95.    Plaintiffs incorporate the above allegations by reference here.

96.    Defendants have, as alleged in detail above, failed to provide Plaintiffs, an African American family, with the same services and facilities that Defendants provide to the White residents of the Coves, including:

    a.    Snow and ice removal,

    b.    Gardening and lawncare, and

    c.    Attention and response to maintenance requests.

97.    Defendants have, as alleged in detail above, intentionally excluded Plaintiffs from notices of annual and special meetings of the condominium association because of Plaintiffs' race.

98.    Defendants have, as alleged in detail above, harassed Plaintiffs through:

      a.    Noticing them of a lien for past-due association fees, but then failing to respond to Plaintiffs; timely requests for explanations of the notices and accompanying fines, and

      b.    Failing to timely process Plaintiffs' association fee payments, so that Plaintiffs' account is subject to late-payment fines, even when Plaintiffs prepay their association fees.

99.    As a result of Defendants' discrimination against Plaintiffs in the provision of facilities and services connected to their housing, Plaintiffs have suffered:

      a.    Significant out-of-pocket costs related to making repairs, conducting maintenance themselves, and sending payments by certified mail,

      b.    Significant damages to their home's interior,

      c.    Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

      d.    Significant loss in the value of their home,

     e.    Exclusion from decision-making meetings that affect the value of their house and enjoyment of their home, and

     f.    Severe emotional distress from the humiliation, dignitary harm, and other suffering caused by the above-described racial animus.

## C:  Interference with Plaintiffs' Equal Rights to Hold Real Property in Violation of 42 U.S.C. § 1982

100.  Plaintiffs incorporate the above allegations by reference here.

101.  Through the acts and omissions alleged in detail above, Defendants have prevented Plaintiffs from enjoying the same rights White members of the Coves enjoy to services, facilities, repairs, and maintenance of their property.

102.  Through the acts and omissions alleged in detail above, Defendants have prevented Plaintiffs from the right to participate in the governance of the condominium association that the white members of the Coves enjoy.

103.  As a result of Defendants' actions in violation of 42 U.S.C. § 1982, Plaintiffs have suffered:

     a.    Significant out-of-pocket costs related to making repairs and conducting maintenance themselves,

     b.    Significant damages to their home's interior,

    c.     Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

    d.     Significant loss in the value of their home,

    e.     Exclusion from decision-making meetings that affect the value of their house and enjoyment of their home,

    f.     Severe emotional distress from the humiliation, dignitary harm, and other suffering caused by the above-described racial animus.

104.   As a result of Defendants' actions in violation of 42 U.S.C. § 1982, Plaintiffs have incurred legal expenses and costs, to which they are entitled to recovery under 42 U.S.C. § 1988.

**D    <u>Interference with Plaintiffs' Equal Rights to the Benefits and Privileges of their Condominium Contract, in Violation of 42 U.S.C. § 1981</u>**

105.   Plaintiffs incorporate the above allegations by reference here.

106.   Plaintiffs are in a contractual relationship with the Coves through the Coves Condominium Association Bylaws.

107.   Through the acts and omissions alleged in detail above, Defendants, on the basis of race, have prevented Plaintiffs from enjoying the same rights to services, facilities, repairs, and maintenance of their property

that White members of the Coves enjoy.

108. Through the acts and omissions alleged in detail above, Defendants, on the basis of race, have prevented Plaintiffs from the right to participate in the governance of the condominium association that the white members of the Coves enjoy.

109. As a result of Defendants' actions in violation of 42 U.S.C. § 1981, Plaintiffs have suffered:

     a.    Significant out-of-pocket costs related to making repairs and conducting maintenance themselves,

     b.    Significant damages to their home's interior,

     c.    Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

     d.    Significant loss in the value of their home,

     e.    Exclusion from decision-making meetings that affect the value of their house and enjoyment of their home,

     f.    Severe emotional distress from the humiliation, dignitary harm, and other suffering caused by the above-described racial animus.

110. As a result of Defendants' actions in violation of 42 U.S.C. § 1981,

Plaintiffs have incurred legal expenses and costs, to which they are entitled to recovery under 42 U.S.C. § 1988.

**E**   **Denial of Housing to a Person with a Disability in Violation of the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1506a**

111.   Plaintiffs incorporate the above allegations by reference here.

112.   Defendants are persons covered by the PWDCRA.

113.   Plaintiff is a person with a disability as defined by the PWDCRA.

114.   Defendants engage in transactions related to real estate as defined by the PWDCRA.

115.   Defendants, through their failure to respond, denied Plaintiffs' requests to install bannisters as a reasonable accommodation for Jerome Hill's disability, in violation of M.C.L. § 37.1506a.

116.   As a result of Defendants' unlawful discrimination against Jerome Hill, he has suffered numerous damages, including:

a.   the inability to use his front porch stairs independently and confidently for fear of falling due to his disability, along with

b.   the severe emotional distress, pain and humiliation from the discriminatory treatment he has received from having his reasonable request for an accommodation ignored.

**F**   **Denial of Housing to a Person on the Basis of Race, in Violation of The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2502**

117.   Plaintiffs incorporate the above allegations by reference here.

118.   Defendants are persons covered by the ELCRA.

119.   Plaintiff is a person with a disability as defined by the ELCRA.

120.   Defendants engage in transactions related to real estate as defined by the ELCRA.

121.   As alleged in detail above, Defendants have discriminated against Plaintiffs on the basis of race in the provision of services and facilities for their home, a right to which they are entitled and to which they are entitled through the Coves bylaws.

122.   As alleged in detail above, Defendants have discriminated against Plaintiffs on the basis of race by excluding them from governance of the Coves, a right to which they are entitled by the Coves bylaws.

123.   As a result of Defendants' actions in violation of 42 U.S.C. § 1981, Plaintiffs have suffered:

        a.   Significant out-of-pocket costs related to making repairs and conducting maintenance themselves,

        b.   Significant damages to their home's interior,

   c.    Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

   d.    Significant loss in the value of their home,

   e.    Exclusion from decision-making meetings that affect the value of their house and enjoyment of their home,

   f.    Severe emotional distress from the humiliation, dignitary harm, and other suffering caused by the above-described racial animus.

### G.    Negligence in Violation of the Common Law of Michigan

124.   Plaintiffs incorporate the above allegations by reference here.

125.   Defendants owed Plaintiffs a duty, as defined by the Coves Bylaws, to provide maintenance, repairs, services, and facilities to the common elements, general and limited, of the Coves adjacent to Plaintiffs' home and, including but not limited to the foundation of the Hills' home, the porch of their home, and the vacant lot.

126.   Plaintiffs have repeatedly over the years, and most recently in April of 2017, communicated to Defendants that damages to the foundation of their home have caused further damage to their home, including water leaks, buckled windows, and the introduction of pests and toxins to their home.

127.   Plaintiffs have repeatedly over the years, and most recently in April of 2017, communicated to Defendants that they were in need of a porch bannister, and the bylaws prevent Plaintiffs from installing a bannister without Defendants' approval.

128.   Plaintiffs have repeatedly over the years, and most recently in April of 2017, communicated to Defendants that the land adjacent to their home has pits and water holes making it unsafe and creating the conditions for further damage to their home's foundation.

129.   Defendants have failed to respond to Plaintiffs' requests for repairs and maintenance to these common elements adjacent to their home.

130.   Defendants' failure to respond to Plaintiffs' requests have resulted in further decay and deterioration of their home, as well as their personal exposure to mold, pests, and toxins.

131.   Defendants' failure to Plaintiffs' request for porch bannisters has caused Plaintiffs severe emotional distress, as well as significant risk of injury:

        a.  Significant out-of-pocket costs related to making repairs and conducting maintenance themselves,

        b.  Significant damages to their home's interior,

    c.  Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

    d.  Significant loss in the value of their home,

    e.  The loss of the peaceful and quiet enjoyment of their home, along with the severe emotion distress caused by such a loss.

**H.**    **Enforce Terms of the Coves Bylaws Pursuant to the Michigan Codominium Act, M.C.L. § 559.207**

132.  Plaintiffs incorporate the above allegations by reference here.

133.  Defendant Coves is an association of co-owners covered by the Condominium Act.

134.  Plaintiffs are co-owners of the Coves.

135.  As alleged in detail above, Defendant Coves has failed to furnish services and facilities to Plaintiffs and failed to respond to Plaintiffs' maintenance and repairs requests as is required by the Coves Bylaws.

136.  As alleged in detail above, Defendant Coves has failed to respond to Plaintiffs' request for permission to install bannisters on their porch, a limited common element, as the Coves Bylaws require.

137.  As alleged in detail above, Defendant Coves has failed to provide notice to Plaintiffs of annual and special meetings, as the Coves Bylaws require.

138. As alleged in detail above, Plaintiffs have suffered damages from these omissions by Defendant Coves, including:

    a. Significant out-of-pocket costs related to making repairs and conducting maintenance themselves,

    b. Significant damages to their home's interior,

    c. Exposure to mold, rodents, pests, and toxins that has prevented their quiet enjoyment of their home and impaired their home's habitability,

    d. Significant loss in the value of their home,

    e. The loss of the peaceful and quiet enjoyment of their home, along with the severe emotion distress caused by such a loss.

## V. REMEDIES REQUESTED

Because of Defendants' above-described joint and several violations of Plaintiff's rights under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, the 1866 Civil Rights Act, 42 U.S.C. §§ 1981, 1982, the Michigan Persons With Disabilities Civil Rights Act, M.C.L. §§ 37.1101 *et seq.*, the Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.*, and the Common Law of Michigan, Plaintiffs seek the following relief:

a.  An Order enjoining Defendants to immediately install porch bannisters consistent with the style and quality of the bannisters installed on other homes within the Coves;

b.  An Order enjoining Defendants to immediately conduct an independent inspection of Plaintiffs' home to evaluate the habitability of the home and conduct immediate repairs that are deemed to be related to the ongoing neglect of Plaintiffs' requests for repairs;

c.  Actual damages;

d.  Damages related to emotional distress, embarrassment, and humiliation related to the extremely discriminatory treatment Plaintiffs have endured;

e.  Damages related to the loss of peaceful and quiet enjoyment of Plaintiffs' home;

f.  Equitable relief ordering Defendants to repair and replace all damages to Plaintiffs home resulting from their neglect and discriminatory treatment of Plaintiffs' requests for repairs;

g.  Equitable relief ordering Defendants to remove the baseless lien against Plaintiffs' home;

h. Attorneys' fees and costs, as well as expert fees, as allowed under 42 U.S.C. § 1988 and the other implicated statutes and common law;

i. Punitive damages for Defendants' knowledge of the illegality of their actions and the egregiousness of their unlawful conduct; and

j. Any and all other remedies as the Court deems appropriate.

Respectfully submitted,

**PITT MCGEHEE PALMER & RIVERS, P.C.**

/s/ Robin B. Wagner (P79408)
Megan A. Bonanni (P52079)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated:  July 20, 2017

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Sheila and Jerome Hill,

|  |  |
|---|---|
| Plaintiffs, | Case No. |
| v. | Hon.<br>United States District Judge |
| Kramer-Triad Management Group, LLC, a Michigan Limited Liability Company, and Coves at Bradbury Park Condominium Association, a Michigan domestic non-profit corporation, jointly and severally, | Magistrate Judge |
| Defendants. | |

_____

## DEMAND FOR JURY BY TRIAL

Plaintiffs, by and through attorneys, Pitt McGehee Palmer & Rivers, P.C., hereby demand a trial by jury of all issues in the within cause of action.

PITT MCGEHEE PALMER & RIVERS

By:    /s/ Robin B. Wagner (P79408)
Megan A. Bonanni (P52079)
Robin B. Wagner (P79408)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated:  July 20, 2017